IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

VERONICA L. DAVIS,                  §
                                    §
        Plaintiff,                  §
                                    §
v.                                  §          CIVIL ACTION NO. H-12-00287
                                    §
TOYOTA MOTOR CREDIT,                §
COUNTRY WIDE ASSET AND AUTO         §
AUTO RECOVERY,                      §
                                    §
        Defendant.                  §


<u>**MEMORANDUM AND RECOMMENDATION**</u>

Pending before the court[1] are Defendant's Motion for Summary Judgment (Doc. 40) and Plaintiff's Motion for Summary Judgment (Doc. 63). The court has considered the motions, the responses, all relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED** as to the breach of contract, conversion, and DTPA claims and **DENIED** as to Defendant's request for a deferral of the court's decision on the breach of the peace claim. The court further **RECOMMENDS** that Plaintiff's motion be **DENIED**.

## I.  Case Background

Plaintiff filed suit in federal court against Toyota Motor Credit a/k/a Toyota Financial Services ("Defendant") and Country Wide Asset and Auto Recovery ("CWAAR") for claims of conversion,

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A)and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 52.

breach of contract, breach of peace, and violations of the Texas Deceptive Trade Practices Act ("DTPA").[2]

## A.   <u>Factual Background</u>

On July 28, 2007, Plaintiff and Defendant entered into a Motor Vehicle Retail Installment Sales Contract ("Loan Agreement") wherein Plaintiff agreed to pay sixty monthly installments of $462.44 starting on September 6, 2007.[3]  A document dated on the same day also guaranteed title of Plaintiff's 2007 Toyota Camry ("Vehicle") with a lien in favor of Defendant.[4]

The contract stated Plaintiff was considered in default when she did not pay any amount when it came due.[5]  If Plaintiff defaulted, the contract stated that Defendant could demand payment in full without notice and repossess the Vehicle.[6]  It also included a "Limitations of Legal Rights" section that stated Defendant did not have to enforce its rights every time and could enforce them at any time.[7]

---

[2]      <u>See</u> Tex. Bus. & Com. Code. §§ 17.46, 17.50.

[3]      <u>See</u> Doc. 40-1, Ex. 2 to Def.'s Mot. for Summ. J., Sales Contract p. 1; Doc. 68-4, Ex. D to Def.'s Resp. to Pl.'s Mot. for Summ. J., Sales Contract p. 1.

[4]      <u>See</u> Doc. 68-5, Ex. E to Def.'s Resp. to Pl.'s Mot. for Summ. J., Notice of Lien; Doc. 41, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep., pp. 21-22.

[5]      <u>See</u> Doc. 40-1, Ex. 2 to Def.'s Mot. for Summ. J., Sales Contract p. 2; Doc. 68-4, Ex. D to Def.'s Resp. to Pl.'s Mot. for Summ. J., Sales Contract p. 2.

[6]      <u>See</u> <u>id.</u>

[7]      <u>See</u> <u>id.</u>

On November 4, 2011, Plaintiff called Defendant and requested extensions for the November 2011 and December 2011 payments.[8] Defendant denied the two-month extension and instead granted Plaintiff an extension for the November 2011 payment and required Plaintiff to pay the unpaid October 2011 payment in full before the agreement would be valid.[9]  The Extension Agreement ("EA") between Plaintiff and Defendant had the following terms: (1) the EA covered the November 2011 payment; (2) the due date for the November 2011 payment was moved from November 6, 2011, to January 6, 2011; (3) the EA had to be signed and returned to Defendant by November 23, 2011; and (4) the EA had to be returned with a check for the amount of the October 2011 payment, which, at the time, was at least thirty days past due.[10]  Before sending back the EA, Plaintiff made the following changes to the EA: (1) added "Nov + Dec" next to "Oct pmt;" and (2) changed the "Will Be Due On:" date for the next payment from December 6, 2011, to January 6, 2011.[11]  Plaintiff sent

---

[8]    See Doc. 41, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 44-45; Doc. 68-11, Ex. K to Def.'s Resp. to Pl.'s Mot. for Summ. J., Letter to Pl. Dated Jan. 19, 2011 ¶ 2.

[9]    See Doc. 68-11, Ex. K to Def.'s Resp. to Pl.'s Mot. for Summ. J., Letter to Pl. Dated Jan. 19, 2011; Doc. 68-4, Ex. D to Def.'s Resp. to Pl.'s Mot. for Summ. J., Sales Contract p. 2; Doc. 40-1, Ex. 2 to Def.'s Mot. for Summ. J., Sales Contract p. 2.

[10]   See Doc. 68-6, Ex. F to Def.'s Resp. to Pl.'s Mot. for Summ. J., Pl.'s Account History; Doc. 68-7, Ex. G to Def.'s Resp. To Pl.'s Mot. for Summ. J., Altered Extension Agreement; Doc. 68-12, Ex. L to Def.'s Resp. to Pl.'s Mot. for Summ. J., Letter to Pl. Dated Jan. 25, 2012 ¶ 4.

[11]   The court also notes that Plaintiff made the following changes that did not affect the terms of the EA: (1) added the words "Please call [phone number]" in the margin; (2) signed and dated the form on December 19, 2011; and (3) added the words "I did not receive this at post office, wrong box, please

the modified EA to Defendant on December 19, 2011.[12]

On December 20, 2011, in response to the altered EA sent without a payment,[13] Defendant sent a "Notice of Incomplete Request" stating that Defendant was unable to process the EA because it was altered.[14] The letter included another EA with the original terms, as well as a condition that the EA had to be signed and returned to Defendant by January 3, 2012.[15] On December 29, 2011, Plaintiff sent Defendant a signed EA that expired on November 23, 2011, without a payment.[16]

On January 6, 2012, Plaintiff attempted to make an online

---

extend." Doc. 41, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 50-51.; see Doc. 68-7, Ex. G to Def.'s Resp. to Pl.'s Mot. for Summ. J., Altered Extension Agreement.

[12]    See id.; Doc. 41, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 53.

[13]    Plaintiff is unclear in her deposition as to whether a check was sent to Defendant.  Nonetheless, even if a check were sent, Plaintiff has produced no evidence that it was sent by November 23, 2011, as required by the EA.  See Doc. 68-11, Ex. K to Def.'s Resp. to Pl.'s Mot. for Summ. J., Letter to Pl. Dated Jan. 19, 2012 ¶ 4; see id. pp. 48-49.

[14]    See Doc. 68-8, Ex. H to Def.'s Resp. to Pl.'s Mot. for Summ. J., Letter to Pl. Dated Dec. 20, 2011 ¶¶ 1-2; Doc. 41, Ex. 1 to Def.'s Mot. for Summ. J., Pl. Davis' Dep. p. 51.

[15]    See Doc. 68-8, Ex. H to Def.'s Resp. to Pl.'s Mot. for Summ. J., Letter to Pl. Dated Dec. 20, 2012 ¶¶ 1-2; see Doc. 68-11, Ex. K to Def.'s Resp. to Pl.'s Mot. for Summ. J., Letter to Pl. Dated Jan. 19, 2012 ¶ 3; Doc. 41, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 47-48.

[16]    Plaintiff claims that she sent a check in, but the record before the court does not include any of her bank records.  See Doc. 68-9, Ex. I to Def.'s Resp. to Pl.'s Mot. for Summ. J., Extension Agreement Signed Dec. 29, 2011; Doc. 68-11, Ex. K to Def.'s Resp. to Pl.'s Mot. for Summ. J., Letter to Pl. Dated Jan. 19, 2012 ¶¶ 3-4; Doc. 41, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 54-55.

4

payment to Defendant in the amount of $462.44.[17]  Based on how the website posted payments, the payment was scheduled for January 8, 2012.[18]  The payment did not result in the approval of the EA because it was made after the EA's January 3, 2011 expiration date.[19]

Because the EAs were not sent to Defendant by their respective due dates and because Plaintiff failed to remit the October payment check of $462.44, Defendant assigned the Vehicle for repossession on January 7, 2012.[20]  The Vehicle was repossessed on January 9, 2012.[21]

During the repossession,[22] Plaintiff asked the repossession agent to let her access the Vehicle to retrieve items inside.[23]  The repossession agent refused and Plaintiff tried to access the trunk, which resulted in her being lifted up with the Vehicle as it was

---

[17]     See Doc. 68-11, Ex. K to Def.'s Resp. to Pl.'s Mot. for Summ. J., Letter to Pl. Dated Jan. 19, 2012 ¶ 5; Doc. 68-12, Ex. L to Def.'s Resp. to Pl.'s Mot. for Summ. J., Letter to Pl. Dated Jan. 25, 2012 ¶ 8; Doc. 41, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 54.

[18]     See Doc. 68-11, Ex. K to Def.'s Resp. to Pl.'s Mot. for Summ. J., Letter to Pl. Dated Jan. 19, 2012 ¶ 5; Doc. 68-12, Ex. L to Def.'s Resp. to Pl.'s Mot. for Summ. J., Letter to Pl. Dated Jan. 25, 2012 ¶ 8.

[19]     See Doc. 68-11, Ex. K to Def.'s Resp. to Pl.'s Mot. for Summ. J., Letter to Pl. Dated Jan. 25, 2012 ¶ 5.

[20]     See id.

[21]     See id.

[22]     The only evidence in the record as to what happened during the repossession are statements Plaintiff made during her deposition.

[23]     Doc. 41, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 109.

about to be towed.[24]   Plaintiff jumped down from the Vehicle and injured her ankle.[25]   When Plaintiff saw the Vehicle after the repossession, several of the Vehicle's parts were either different or damaged.[26]

Plaintiff sent a demand letter to Defendant on January 17, 2012, stating that she demanded a new Toyota Camry as relief for wrongful repossession.[27]   Although one of Plaintiff's claims against Defendant was that it failed to appropriately repair her car, Plaintiff also admitted that this claim was against the Toyota dealership itself[28] and not against Defendant.[29]

In response, Defendant sent a letter to Plaintiff dated January 19, 2011, that relayed the chronology of all correspondence and payments from November 4, 2011, to January 17, 2012.[30]   It also stated that any claims regarding the behavior of the repossession agent should be directed at the repossession company.[31]   Also, the letter stated that the loan could be reinstated if Plaintiff paid

---

[24]     Id.

[25]     Id. p. 111.

[26]     Id. p. 113.

[27]     Id. pp. 92-93.

[28]     The Toyota dealership is not currently a party to the suit.

[29]     Id. p. 100.

[30]     See Doc. 68-11, Ex. K to Def.'s Resp. to Pl.'s Mot. for Summ. J., Letter to Pl. Dated Jan. 25, 2012 ¶¶ 1-5.

[31]     See id. ¶¶ 6-7.

6

$2,313.12 in past due payments and repossession fees by January 30, 2012.[32]   Defendant stated that Plaintiff was late on the October 2011, November 2011, December 2011, and January 2012 payments.[33] If the loan was not reinstated by the aforementioned date, Defendant stated that the car would be sold at a private auction.[34]

## B.  **Procedural Background**

Plaintiff instituted the present suit against Defendant and CWAAR in federal court on January 30, 2012, on the basis of diversity jurisdiction.[35]   In her original complaint, Plaintiff alleged five causes of action: (1) conversion of the Vehicle and its contents; (2) breach of peace during the repossession; (3) several violations of the Texas DTPA; (4) breach of contract; and (5) violations of the Consumer Protection Act.[36]   Defendant and CWAAR filed answers to Plaintiff's original complaint shortly thereafter.[37]   Defendant counterclaimed with two causes of action: (1) breach of contract; and (2) assertion of a groundless DTPA claim, warranting payment of attorney's fees.[38]

---

[32]     See id. ¶ 8.

[33]     Plaintiff disputes this claim and argues that she was late on only two payments.  See id.

[34]     See id.

[35]     See Doc. 1, Pl.'s Compl.

[36]     See 15 U.S.C. § 1601.

[37]     See Doc. 9, Def.'s Answer to Pl.'s Compl.; see Doc. 12, Def.'s Answer to Pl.'s Compl.

[38]     See Doc. 26, Def.'s Countercls.

CWAAR filed a timely motion for summary judgment on April 5, 2012, and the court granted CWAAR's motion on July 27, 2012.[39]  In its argument for summary judgment, CWAAR successfully disputed Plaintiff's assertion that it was the company that repossessed the Vehicle.[40]

Defendant then filed the pending motion for summary judgment with leave of court on October 25, 2012.[41]  Plaintiff filed a response and an amended response to Defendant's motion on January 25, 2013.[42]  The same day, Plaintiff filed her pending motion for summary judgment and an amended complaint.[43]  With leave of court, Plaintiff amended her original complaint and clarified her alleged causes of action: (1) breach of contract; (2) conversion of the Vehicle and its contents; (3) fraud in the inducement under the Texas DTPA; and (4) breach of peace during the repossession.[44]  Defendant responded to Plaintiff's motion for summary judgment and filed a reply in support of its motion for summary judgment on

---

[39]    See Doc. 25, CWAAR's Mot. for Summ. J.; Doc. 28, Order Dated July 27, 2012.

[40]    See Doc. 25, CWAAR's Mot. for Summ. J.

[41]    See Doc. 39, Mot. for Leave of Ct.; Doc. 40, Def.'s Mot. for Summ. J.; Doc. 58, Order Dated Nov. 30, 2012.

[42]    See Doc. 61, Pl.'s Resp. to Def.'s Mot. for Summ. J.; Doc. 62, Pl.'s Am. Resp. to Def.'s Mot. for Summ. J.

[43]    See id.; Doc. 63, Pl.'s Mot. for Summ. J.; Doc. 64, Pl.'s Am. Compl.

[44]    See Doc. 64, Pl.'s Am. Compl.; Doc. 58, Order Dated November 30, 2012.

February 15, 2012.[45]  Defendant then filed a motion for leave to file a third-party complaint, which the court denied.[46]

The pending summary judgment motions are fully briefed and ready for court consideration.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. V. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgewick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings,

---

[45]     See Doc. 68, Def.'s Resp. to Pl.'s Mot. for Summ. J.; Doc. 69, Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J.

[46]     See Doc. 70, Def.'s Mot. for Leave to File Third-Party Compl.; see Doc. 71, Order Dated Apr. 2, 2013.

depositions, answers to interrogatories, admissions or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show that the facts are not in dispute, the party opposing summary judgment must go beyond the pleadings and proffer evidence demonstrating that genuine issues of material fact do exist that must be resolved at trial. See Celotex Corp., 477 U.S. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

### III. Analysis

Defendant moves for summary judgment on all of Plaintiff's claims except for the breach of peace claim. Plaintiff moves for summary judgment on all claims except the DTPA claim. The summary judgment motions raise arguments on all four of Plaintiff's claims. The court addresses the merits of each argument.

### A. Breach of Contract

Defendant challenges Plaintiff's claim that Defendant breached

the Loan Agreement by repossessing the car in spite of several filed EAs, arguing that Plaintiff breached the contract prior to any alleged breach by Defendant when she defaulted on the loan. The court agrees that the undisputed facts show that Plaintiff breached the contract.

To establish a claim of breach of contract, a plaintiff must successfully prove four elements: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages resulting from the breach. Simien v. Unifund CCR Partners, 321 S.W.3d 235, 247 (Tex. App.–Houston [1st Dist.] 2010, no pet.). Whether a party has breached a contract is a question of law for the court, not a question of fact for the jury. Meek v. Bishop Peterson & Sharp, P.C., 919 S.W.2d 805, 808 (Tex. App.–Houston [14th Dist.] 1996, writ denied). "The court determines what conduct is required by the parties, and, insofar as a dispute exists concerning the failure of a party to perform the contract, the court submits the disputed fact questions to the jury." Id. When facts are conclusive or undisputed, however, the court need not submit issues to the jury. Id.

Here, Defendant contends that Plaintiff failed to perform under the Loan Agreement by defaulting on her loan. In support of its position, Defendant cites Plaintiff's deposition, the Loan Agreement, and the EAs as proof of Plaintiff's failure to fully

11

perform under the terms of the Loan Agreement, thereby negating the second element of Plaintiff's breach of contract claim.  The issue at hand with the second element of the claim is whether Plaintiff defaulted on the Loan Agreement prior to any alleged breach by Defendant.

As laid out by the Loan Agreement between Plaintiff and Defendant, a debtor is considered in default when she does not make a payment on time.[47]  Plaintiff admits that she was behind on two payments but disputes that she was three payments behind, as claimed by Defendant.[48]  The parties agree Plaintiff made a payment in November 2011 and a dispute exists regarding whether the payment applies to a past-due payment from September or October.[49]

Although Plaintiff repeatedly claimed that she would provide bank records to corroborate that she made the October 2011 payment, the competent summary judgment evidence before the court confirms only that a payment was made in November 2011, a fact that is not in dispute, but does not specify whether that payment applied to the past-due October 2011 payment.[50]  Even accepting the facts as stated by Plaintiff as true, Plaintiff would still have been a

---

[47]     See Doc. 40-1, Ex. 2 to Def.'s Mot. for Summ. J., Sales Contract.

[48]     See Doc. 41, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 25-26.

[49]     See id. pp. 68-71; Doc. 40-2, Ex. 2 to Def.'s Mot. for Summ. J., Pl.'s Account History.

[50]     See Doc. 40-2, Ex. 2 to Def.'s Mot. for Summ. J., Pl.'s Account History.

minimum of two months behind on her payments given that the EA was not accepted by Defendant.[51]

Plaintiff alleges that the contract was modified when she sent signed EAs to Defendant, extending the deadline for her payments. Plaintiff, however, admitted in her deposition that she did not return either of the EAs on time.[52] She stated that she received one EA in the mail after the due date and that she mistakenly sent in the wrong form in attempting to submit the second EA form.[53] Plaintiff's exhibits do not show any record of a valid EA being filed on time that would extend the deadline for one of her payments.[54]

In her deposition, Plaintiff admits that Defendant had rights to repossession and to demand payment in full when Plaintiff defaulted.[55] Based on provisions of the Loan Agreement and the competent summary judgment evidence produced in this case, the

---

[51]    See Doc. 68-11, Ex. K to Def.'s Resp. to Pl.'s Mot. for Summ. J., Letter to Pl. Dated Jan. 25, 2012 ¶¶ 3-4.

[52]    Doc. 41, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 44-53.

[53]    Id.

[54]    Plaintiff provides case law suggesting that when a creditor habitually accepts late payments, they are obligated to continue to accept them. See Ford Motor Credit Co. v. Wash., 573 S.W.2d 616, 618 (Tex. Civ. App.–Austin 1978, writ n.r.e.). The case involved a repossession where a debtor defaulted but claimed to never have received notice of repossession after defaulting. See id. This case is not applicable here because the Loan Agreement at issue contains a specific provision that Defendant is not required to enforce its rights every time and that Defendant may exercise its right to repossess once the debtor defaults. See Doc. 40-1, Ex. 2 to Def.'s Mot. for Summ. J., Sales Contract.

[55]    See Doc. 41, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 24.

13

court finds that Plaintiff was in default on her loan when she fell behind on her November and December 2011 payments, constituting a breach of contract.[56]  Therefore, the court recommends that summary judgment be granted in favor of Defendant on Plaintiff's and Defendant's breach of contract claims.

## B. Conversion

Defendant argues that Plaintiff's conversion claim is not applicable because Defendant has superior title to the Vehicle. The court agrees.

Conversion is defined as the "wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights." Waisath v. Lack's Stores, Inc., 474 S.W.2d 444, 447 (Tex. 1971). For a claim of conversion, a plaintiff must prove four elements: (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded the return of the property; and (4) the defendant refused to return the property.  Burns v. Rochon, 190 S.W.3d 263, 267-68 (Tex. App.–Houston [1st Dist.] 2006, no pet.).  Regarding the lawful repossession of collateral, in the absence of a provision to the contrary, "a secured party is granted

---

[56]     See Doc. 40-1, Ex. 2 to Def.'s Mot. for Summ. J., Sales Contract.

the right to take possession of the property securing an indebtedness upon default by the [debtor]." <u>Kirkman v. North State Bank of Amarillo</u>, 476 S.W.2d 958, 959 (Tex. App.–Amarillo 1972, writ ref'd n.r.e.)(defining the rights of a secured party in the context of a mortgage).

Here, the first element of Plaintiff's conversion claim, which requires that Plaintiff have superior title, is in dispute. Plaintiff argues that she did not breach the contract and therefore Defendant did not have superior title. Defendant argues that Plaintiff's defaulting on the loan gave it superior title to the Vehicle. As stated in the discussion of the breach of contract claim, Defendant established that it had a lien on the Vehicle when the Loan Agreement was signed.[57] Plaintiff has produced nothing to to rebut this evidence. Moreover, Plaintiff admitted that Defendant had the right to repossess or demand full payment when she defaulted on her loan.

Because the court has determined as a matter of undisputed fact that Plaintiff defaulted on her loan, the court finds that Defendant, as a secured party, had the right to take possession of the Vehicle. <u>See</u> <u>id.</u>; Tex. Bus. & Comm. Code § 9.609. With Defendant's lawful repossession, Defendant has superior title to the Vehicle as against Plaintiff. The conversion claim thus fails

---

[57]   <u>See</u> Doc. 68-5, Ex. E to Def.'s Resp. to Pl.'s Mot. for Summ. J., Notice of Lien.

on the first element because Plaintiff has failed to show that she
had a superior title to the Vehicle.   Accordingly, the court
recommends that summary judgment on Plaintiff's conversion claim be
granted in favor of Defendant.

## C. DTPA Claim

Defendant argues that Plaintiff does not fall under the
definition of "consumer" as defined by the DTPA and therefore
cannot recover on her DTPA claim.   See Tex. Bus. & Comm. Code §
17.46(b).   The court agrees.

To establish a cause of action under the DTPA, a plaintiff
must demonstrate three elements: (1) the plaintiff is a consumer;
(2) the defendant engaged in false, misleading, or deceptive acts;
and (3) the acts were a producing cause of the consumer's damages.
Doe v. Boys Club of Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex.
1995).   To qualify as a consumer, the plaintiff "must have sought
or acquired goods or services by purchase or lease," and the goods
or services must form the basis of the complaint.   Cameron v.
Terrell & Garrett, Inc., 618 S.W.2d 535, 539 (Tex. 1981).   Under
the DTPA, a loan is not a good or service.   See Riverside Nat'l
Bank v. Lewis, 603 S.W.2d 169, 174-75 (Tex. 1980)(finding that a
loan is not considered a tangible chattel to qualify as a good and
is not considered work or labor to qualify as a service under the
DTPA).   "[T]he key principle in determining consumer status is that
the goods or services purchased must be an *objective* of the

16

transaction, not merely incidental to it." <u>Maginn v. Norwest Mortg., Inc.</u>, 919 S.W.2d 164, 166 (Tex. App.–Austin 1996, no writ)(quoting <u>First State Bank v. Keilman</u>, 851 S.W.2d 914, 929 (Tex. App.–Austin 1993, writ denied)).

In <u>Maginn</u>, the plaintiffs sued a mortgage company under the DTPA for services regarding the processing of a loan application. <u>Id.</u> at 167.   The court found that the services of processing the loan application "served no purpose apart from facilitating a loan" and were "not an objective of the transaction." <u>Id.</u>   Given that the services were not an objective of the transaction, the court found that the plaintiffs were not considered "consumers" under the DPTA. <u>Id.</u>

Here, Plaintiff stated that the basis of the DTPA claim is that "Defendant failed to honor the extension agreement and payment."[58]   Given that the EA process served only to avoid delinquency of a loan, it is analogous to the loan application process in <u>Maginn</u>.  As Plaintiff's claim specifically pertains to the EA and not the loan itself, the court finds the EA to be incidental to the transaction.   Therefore, Plaintiff is not a consumer under the DTPA as a matter of law.   The court thus recommends that summary judgment be granted in favor of Defendant on Plaintiff's DTPA claim.

## D. **Breach of Peace**

---

[58]   Doc. 64, Pl.'s Compl. p. 4.

Defendant argues that Plaintiff's breach of peace claim should be deferred pursuant to Fed. R. Civ. P. 56(d) because the company that repossessed the Vehicle is not a party to the suit.  The court does not agree and, therefore, recommends that Defendant's request for a deferral of the court's decision on this cause of action be denied.

When a debtor defaults, a secured party has the option to proceed with either legal action or self-help repossession, the latter remedy being available to the creditor as long as it proceeds without breach of the peace.  <u>See</u> Tex. Bus. & Comm. § 9.609.  When a secured party elects to take possession of collateral through repossession outside of the courts, it assumes the risk that a breach of peace may occur.  <u>See</u> <u>Mbank El Paso, N.A.</u> <u>v. Sanchez</u>, 836 S.W.2d 151, 154 (Tex. 1992).

In <u>Mbank El Paso, N.A.</u>, the bank hired a recovery company to repossess Sanchez's vehicle.  <u>Id.</u> at 152.  Two men were dispatched to Sanchez's home, found the vehicle in the driveway and hooked it to a tow truck.  <u>Id.</u>  Sanchez demanded that the men stop the repossession; they refused.  <u>Id.</u>  Before the vehicle could be towed from the driveway, Sanchez jumped into the vehicle, locked the doors and refused to leave.  <u>Id.</u>  The men towed the vehicle at a high rate of speed to the repossession yard, parked the vehicle, and padlocked the gate, leaving Sanchez in her car, with a Doberman pinscher guard dog loose in the yard.  <u>Id.</u>  Sanchez was eventually

18

rescued by her husband and police.   Id.

The bank conceded that the facts alleged rose to the level of a breach of the peace and argued that it had delegated its duty under Section 9.503 of the Texas Business and Commerce Code to the repossession company, and that the repossession company was an independent contractor for whom the bank was not responsible.[59]   The Texas Supreme Court disagreed, finding that a secured party had a duty of peaceable repossession that could not be delegated to an independent contractor.   Id. at 152.

As the duty to a peaceable repossession cannot be delegated to an independent contractor, the claim against Defendant is still viable without the inclusion of the repossession company.   The court turns to whether the facts as alleged by Plaintiff state a claim for breach of the peace.

In Price Auto Sales, Inc. v. Sanders, 2012 WL 3734388, (Tex. App.–Dallas 2012, no pet.) (unpublished), a plaintiff who defaulted on a car loan won damages for a breach of the peace claim against the car company where he bought the car.   Id. at *1.   During the repossession, the plaintiff saw the repossession agent put keys into the ignition and start to drive away.   Id. at *2.   The plaintiff ran after the car and demanded that the agent leave the car.   Id.   Two witnesses testified that the agent ran over the

---

[59]     Section 9.503 of the Texas Business and Commerce Code was recodified as Section 9.609, effective July 1, 2001.

plaintiff's foot and caused several injuries.  Id.  In analyzing
this claim, the court looked to whether the agent encountered
confrontation and, if the agent did, whether he ended the
repossession to prevent a disturbance to the peace. Id. at *3.
Moreover, the court noted that other jurisdictions have found that
continuing a repossession after the debtor objects is considered a
breach of peace.  Id.

In Chapa v. Traciers & Associates, 267 S.W.3d 386 (Tex. App.
– Houston [14th Dist.] 2008, no pet.), a repossession firm
repossessed a vehicle that was parked on the street with the motor
running and two children inside.  Id. at 389.  It was undisputed
that the tow truck driver did not know that children were inside
the vehicle and that the entire process of hooking the vehicle and
driving it away took thirty seconds.  Id.  Several blocks later,
when the driver observed the wheels of the towed vehicle turning,
he stopped and discovered the children.  Id.  The children's
parents sued for mental anguish, claiming a violation of Section
9.609.  Id. at 390.  In determining that the above facts did not
amount to a civil breach of the peace, the Chapa court
distinguished its case from cases in other jurisdictions where
courts found a breach of the peace on the grounds that the
repossession agent in Chapa was unseen by the vehicle's owner and
no confrontation occurred during the repossession.  See id. at 394,
n.15 (citing cases); Nixon v. Halpin, 620 So.2d 796 (Fla. Dist. Ct.

App. 1993).

Specifically, the Chapa court discussed the facts of Nixon, where the owner of a repossessed vehicle saw the repossession agent, mistook her for a car thief, and, with the help of an office mate, attempted to stop the agent.  See Chapa, 267 S.W.3d at 394; Nixon, 620 So.2d at 797.   In the process, the agent struck the plaintiff with the car, causing serious injury.  Nixon, 620 So.2d at 797.  The Nixon court determined that the owner of the vehicle was entitled to object to the vehicle's repossession and that if the creditor "had not already peaceably removed the vehicle when the owner objected, it[]s continuation with the attempt at repossession was no longer 'peaceable and without a breach of the peace.'"  Id. at 798.  Noting that the tow truck driver had already removed the vehicle without confrontation and had immediately ceased the repossession when he discovered the children in the vehicle, the Chapa court reasoned that the peace was not breached. See Chapa, 267 S.W.3d at 394.

Here, Plaintiff alleges that there was a breach of the peace due to her fall after she objected to the repossession.   In her deposition, she stated that she repeatedly objected to the repossession before the car was towed.   As discussed in Sanders and Chapa, one factor for courts to consider when determining if a breach of the peace occurred is whether there was a confrontation between the repossession agent and the debtor.  If there was a

21

confrontation, the court must decide whether the agent avoided additional confrontation.  Because the only information provided is that Plaintiff confronted the repossession agent about the repossession, there is a question of fact regarding whether Defendant committed a breach of the peace. Therefore, the court recommends that summary judgment in favor of Plaintiff be denied.

In its Rule 56(d) request to postpone the court's decision on this claim, Defendant indicated that only the deposition of the repossession agent would be required for this cause of action.  If this Memorandum and Recommendation is adopted, Defendant shall have twenty days therefrom to supplement its discovery with the repossession agent's deposition.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's motion be **GRANTED** as to the breach of contract, conversion, and DTPA claims and **DENIED** as to Defendant's request for a deferral of the court's decision on the breach of the peace claim.  The court further **RECOMMENDS** that Plaintiff's motion be **DENIED**.  If this Memorandum and Recommendation is adopted, Plaintiff's claim for breach of the peace survives.  Defendant shall have twenty days from the adoption of this recommendation to supplement its discovery with the deposition of the repossession agent.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days

from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this <u>14th</u> day of August, 2013.

Nancy K. Johnson
United States Magistrate Judge